**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MICHAEL SCOFIELD, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CWPOH, INC. d/b/a HOME GENIUS EXTERIORS<br><br>Defendant. | Case No. 5:26-cv-8324 |

# CLASS ACTION COMPLAINT

## Preliminary Statement

1. "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry

stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*...This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3. Michael Scofield ("Plaintiff") brings this action under the TCPA alleging that Home Genius Exteriors ("Defendant") violated the TCPA by making telemarketing calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent, by calling those who had specifically asked Defendant not to be contacted, and by making telemarketing calls without the accurate provision of Caller ID Name (CNAM).

**PARTIES**

4. Plaintiff is a natural person.

5. Defendant is a limited liability company is a which is registered to do business in Pennsylvania, with its registered agent office address in Dauphin County, and offices in Allentown and Coatesville, which lie within this District.

## JURISDICTION AND VENUE

6. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

7. The Court has general personal jurisdiction over Defendant because it has registered to do business in Pennsylvania, thereby consenting to the exercise of general personal jurisdiction in Pennsylvania.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because the Defendant has offices in this District and therefore "resides" in this judicial District.

## THE TELEPHONE CONSUMER PROTECTION ACT

9. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The National Do Not Call Registry

10. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

11. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

12. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

The TCPA Also Requires Telemarketers to Transmit Caller Identification Information Including the Telemarketer's Name.

13. The TCPA requires any "person or entity that engages in telemarketing" to "transmit caller identification information." 47 C.F.R. § 64.1601(e).

14. The relevant regulation defines "caller identification information" as "either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer." 47 C.F.R. § 64.1601(e)(1).

15. A violation of this subsection of the TCPA is enforceable under the private right of action provided for under 47 U.S.C. § 227(c)(5)'s private right of action. *Dobronski v. Selectquote Ins. Servs.*, No. 2:23-CV-12597, 2025 WL 900439, at *3 (E.D. Mich. Mar. 25, 2025).

## FACTUAL ALLEGATIONS

16. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

17. Plaintiff's telephone number, (970) XXX-XXXX, is a non-commercial cellular telephone number.

18. Plaintiff uses the telephone number for personal, residential, and household purposes.

19. Plaintiff has never been a customer of Defendant's.

20. Plaintiff uses his cell phone primarily to communicate with friends and family, and also to schedule personal appointments and for other household purposes.

21. Plaintiff's number has been listed on the National Do Not Call Registry since 2004.

22. Despite that, Plaintiff received at least five text message calls and four voice phone calls from Defendant from June 14, 2026 to September 18, 2026.

23. On June 14, Plaintiff received a text message call from Defendant from telephone number (630) 233-4403.

24. The text message call stated the following:

> Hi Michael! This is Julie with Home Genius Exteriors. Looks like you are looking to get some work done on your roof. We would love to help! Our home remodeling experts can answer any question you might have. Are you interested in a quick call? Reply 'Remove' to opt out of SMS.

25. Plaintiff then received another text message call that same day that stated "Let me know when you get a chance."

26. Plaintiff received a third text message call from the same number that day that said, "Is there a better time for me to follow up?"

27. On June 15, 2026 at 7:14 AM, Plaintiff received an additional text call from this same number that said, "Feel free to call back at your convenience. Be sure to ask about our Free Attic Insulation service for new roof installs!"

28. The next day, Plaintiff received another text message call from Defendant from telephone number (443) 291-5449.

29. The text message stated the following:

> Hi Michael, this is Julie with Home Genius Exteriors. We're offering free home inspections for homeowners in your area. Small issues up top can turn into expensive surprises fast. Want us to take a look and give you a clear picture of what we see? Reply END to stop texts.

30. Later that day, Plaintiff received a call from Defendant from telephone number (614) 388-9850.

31. Upon answering, “Manny” with Home Genius Exteriors introduced himself, saying that he received an online request regarding the roof on my home.

32. The Plaintiff had made no such online request.

33. Plaintiff told him to stop calling and hung up the phone.

34. Despite that request, later that day Plaintiff received another call from Defendant from the same number.

35. The caller identified herself as “Skyler” with Home Genius Exteriors.

36. She told Plaintiff that she was following up on an online request for roofing.

37. Plaintiff told Skyler that he had not requested anything.

38. Plaintiff asked how Defendant received the lead, however, she was unable to identify the actual source.

39. In an effort to further identify the Defendant’s company, Plaintiff engaged with Skyler to set up a time for a window estimate.

40. Skyler set up the estimate appointment for 6 PM that same day.

41. Plaintiff requested an email confirmation of the appointment, however, that was never received by Plaintiff.

42. Instead, Skyler transferred Plaintiff to Defendant’s “Confirmations Team.”

43. Plaintiff spoke with “Crystal” with the “Home Genius Confirmations Team” who confirmed the appointment.

44. When asked, Crystal was also unable to provide information on how Defendant received Plaintiff’s telephone number.

45. Later that day, an individual named Tyler with Home Genius Exteriors arrived at Plaintiff’s home for an appointment.

46. Tyler confirmed the address for the Defendant's business was 6855 S. Havana Street, which is Defendant's publicly available address listed on Google.com.

47. Plaintiff asked Tyler to add him to Defendant's internal do not call list.

48. On July 6, 2026 Plaintiff received a call again from Defendant from telephone number (443) 552-5213.

49. The caller introduced herself as "Lewander" calling with Home Genius Exteriors.

50. She told Plaintiff she was calling in regards to an inquiry that was made for the roof for Plaintiff's home.

51. Plaintiff told her again to stop calling and hung up.

52. Finally, on September 18, 2026, Plaintiff received a call from a spoofed telephone number with caller ID displaying 970- 241-2713 and "Allen Barbara."

53. Eventually, the Plaintiff spoke with an individual named Samuel, who stated that he was providing estimates for bathroom, kitchen, windows, roofing, HVAC, and flooring.

54. Samuel then asked Plaintiff how many windows were in his home before transferring Plaintiff to his windows agent.

55. Plaintiff was then connected to "Tricia" at Home Genius Exteriors.

56. Plaintiff went through her intake questions and set an appointment for September 19, 2026.

57. Plaintiff asked her to send him an email with the appointment confirmation, however, he never received one.

58. Plaintiff did receive a text message saying they would send it as soon as the appointment was scheduled.

59. On September 18, Plaintiff received a text message from a number displaying as +1 720-707-1060 from "Julie" with Home Genius Exteriors confirming the appointment the next day.

60. In an effort to confirm the identity of Defendant's company, Plaintiff placed an outbound call from another number to the number listed on Defendant's website, (303) 847-4762.

61. A male answered and identified himself as Home Genius Exteriors.

62. Plaintiff told him that he wanted to cancel the appointment.

63. Defendant's representative stated that was unable to do that, but his appointment confirmation team could.

64. He then transferred Plaintiff to a female who identified herself as "Cheyenne" with Home Genius Exteriors.

65. Plaintiff told her that he wanted to cancel his appointment.

66. She confirmed Plaintiff's appointment and cited his street name.

67. When she asked Plaintiff why he wanted to cancel, Plaintiff replied, it was due to the repeated calls despite Plaintiff's number being on the National Do Not Call Registry.

68. Plaintiff received numerous telemarketing voice and text message calls from Defendant from various telephone numbers during the aforementioned period.

69. It is not possible to call those numbers back to lodge a Do Not Call request during regular business hours.

70. It is not possible to send a text message to those numbers and lodge a Do Not Call request during regular business hours.

71. Nor will anybody texting or calling that telephone number receive an alternate number to call to lodge a Do Not Call request during regular business hours.

72. As such, the caller ID information transmitted along with the text message calls did not transmit a telephone number that permits "any individual to make a do-not-call request during regular business hours."

73. The purpose of the calls and text messages were to solicit the Defendant's business.

74. Plaintiff never consented or requested to receive calls from Defendant.

75. The aforementioned calls to Plaintiff were unwanted.

76. The calls were nonconsensual encounters.

77. Plaintiff's privacy has been violated by the above-described telemarketing calls.

78. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, and their privacy was improperly invaded. Furthermore, the calls unnecessarily used battery life, storage space, bandwidth, and wear and tear.

79. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff and the class.

## Class Action Statement

80. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

81. Plaintiff brings this action on behalf of himself and the following class (the "Classes") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

82. Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> **National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call or text message from or on behalf of Defendant encouraging the purchase of Defendant's goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

> **Telemarketing Caller ID Class:** All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2) two or more telemarketing calls or text messages in a 12-month period, (3) which either (a) did not transmit Defendant or its telemarketer's CPN or ANI at all or (b) transmitted a CPN or ANI that would not have allowed an individual to make a do not call request during regular business hours, (4) within the four years prior to the filing of the Complaint.

> **Internal Do Not Call Class**: All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) (2) but who received more than one telemarketing call from or on behalf of Defendant promoting Defendant's goods or services, (3) who were not current customers of the Defendant at the time of the calls, (4) who had previously asked for the calls to stop and (5) within the four years prior to the filing of the Complaint.

83. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the Classes as he has no interests that conflict with any of the Class members.

84. Excluded from the Classes are counsel, Defendant, and any entities in which Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

85. Plaintiff and all members of the Classese have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

86. This Class Action Complaint seeks injunctive relief and money damages.

87. The Classes as defined above, are identifiable through Defendant's dialer records, other phone records, and phone number databases.

88. Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds.

89. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

90. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

91. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

92. There are numerous questions of law and fact common to Plaintiff and to the proposed Class including, but not limited to, the following:

a. Whether Defendant made multiple calls to Plaintiff and members of the National Do Not Call Registry Class;

b. whether Defendant made multiple calls to Plaintiff and members of the Internal Do Not Call Registry Class;

c. whether Defendant transmitted its CPN or ANI, and whether that CPN or ANI would have allowed a called party to lodge a do not call request during regular business hours;

d. Whether Defendant's conduct constitutes a violation of the TCPA; and

e. Whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

93. Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests which are antagonistic to any member of the Classes.

94. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

95. Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendant and/or its agents.

96. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

97. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## FIRST CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the National Do Not Call Registry Class)**

98. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

99. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227. by making telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

100. Defendant's violations were negligent, willful, or knowing.

101. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 and in damages for each and every call made and up to $1,500 in damages if the calls are found to be willful.

102. Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

**SECOND CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Telemarketing Caller ID Class)**

103. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

104. It is a violation of the TCPA to make a telemarketing call without the transmission of caller identification information including either a seller or its telemarketer's CPN or ANI and, when available by the telemarketer's carrier, the name of the telemarketer. 47 C.F.R. § 64.1601(e)(1).

105. It is a violation of the TCPA to transmit a CPN or ANI that does not allow any individual to make a do-not-call request during regular business hours. 47 C.F.R. § 64.1601(e)(1).

106. Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA by causing multiple telemarketing calls to be initiated to Plaintiff and members of the Telemarketing Caller ID Class in a 12-month period, without proving their CPN or ANI, and/or by providing a CPN or ANI that did not allow any individual to make a do-not-call request during regular business hours.

107. These violations were willful or knowing.

108. As a result of Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA's telemarketing Caller ID transmission requirement, Plaintiff and members of the Telemarketing Caller ID are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

109. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

**<u>THIRD CAUSE OF ACTION</u>**
**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(d) on behalf of Plaintiff and the Internal Do Not Call Class)**

110. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

111. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing calls, except for emergency purposes, to Plaintiff and members of the Internal Do Not Call Class despite previously requesting that such calls stop.

112. Defendant's violations were negligent, willful, or knowing.

113. As a result of Defendant's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Internal Do Not Call Class are entitled to an award of up to $500 and in damages

for each and every call sent and up to $1,500 in damages if the calls are found to be willful.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. Certification of the proposed Classes;

B. Appointment of Plaintiff as representative of the Classes;

C. Appointment of the undersigned counsel as counsel for the Classes;

D. An order enjoining Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to numbers on the National Do Not Call Registry, absent an emergency circumstance;

E. An order enjoining Defendant from placing calls without due registration in the future;

F. An award to Plaintiff and the Class of damages, as allowed by law; and

G. Orders granting such other and further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

RESPECTFULLY SUBMITTED AND DATED this October 30, 2026.

Plaintiff,
By Counsel,

s/Andrew Roman Perrong
Andrew Roman Perrong
a@perronglaw.com
Perrong Law LLC
1669 Edgewood Road, Suite 218
Yardley, PA 19067
215-225-5529
Lead Attorney for Plaintiff and the Proposed Class